**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 11:29 AM May 31, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | |
| PASQUALE MILANO AND ) | CASE NO. 09-61915 |
| SHARON MARIE MILANO, ) | |
| ) | JUDGE RUSS KENDIG |
| Debtors. ) | |
| ) | |
| ) | **MEMORANDUM OF OPINION (NOT** |
| ) | **INTENDED FOR PUBLICATION)** |
| ) | |

   On February 28, 2012, the court held an evidentiary hearing related to three pending matters: Debtors' modification of plan filed on December 20, 2011; CIT Small Business Lending Corporation's ("CIT") motion for relief from stay filed on November 11, 2011, and Debtors' objection to proof of claim number eight filed by CIT on or about August 7, 2009. The parties submitted post-trial briefs and the matter is now before the court.

   The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The following constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

   This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## FACTS

The parties stipulated to many of the pertinent facts. Debtor-husband owns and operates Rapid Auto Center LLC ("Rapid Auto"), a service station located at 13415 Cleveland Ave., N.W. From 1996 through 2002, Debtor leased the premises. In 2002, he purchased the property and CIT provided the financing. CIT lent Debtor $285,000.00 and took a mortgage on the property. As of February 23, 2012, the balance on the note is $337,366.74. This figure includes disputed attorney's fees. Debtors valued the property at $99,000.00 on Schedule A. CIT appraisals show the value of the property is between $95,000.00 (liquidation value) and $135,000.00 ("as is" value).

Debtors were forced to file bankruptcy following a sizeable water, sewer and road expansion project in Uniontown that had a nearly calamitous impact on Rapid Auto's business. Debtor testified that business came to a standstill and he went from pumping 56,000 gallons of gas per month to 12,000 gallons per month. The project lasted three years and four months and ended in 2008. Debtors filed a joint chapter 13 petition on May 15, 2009 to stop a foreclosure of the business premises by CIT.

CIT filed its first motion for relief from stay on December 16, 2009. The order was conditionally granted on June 2, 2010 and required regular monthly payments of $2,143.58 through plan confirmation.

On November 18, 2010, the court confirmed Debtors' fourth amended chapter 13 plan. The plan provided for a sale of the "business property for sufficient monies to satisfy the CIT loan by September 1, 2011." In the interim, Debtor was to maintain the regular monthly mortgage payments.

Debtors could not locate a buyer, so the business was not sold and the CIT loan was not satisfied by September 1, 2011, creating a default under the plan. CIT renewed its request for relief from stay through a motion filed on November 11, 2011 based on the default.

In response, Debtors proposed a plan modification, dated December 20, 2011. They now seek to retain the property, cure the arrearage, and maintain the on-going monthly mortgage payments. Debtors are current on both payments to the plan and to CIT for the regular monthly mortgage. CIT is currently receiving no additional funds on its arrearage claim.

## DISCUSSION

The court will address two procedural irregularities. First, Debtors' modification is technically unopposed because CIT failed to file an objection to the modification dated December 20, 2011. Generally, in the absence of objection, a modification becomes effective following the

expiration of the response period.  However, in this case, it was apparent that CIT opposed the relief.  It objected to a previous modification dated October 24, 2011 and had a motion for relief from stay pending that directly related to the modification.  Additionally, Debtors did not argue that the modification was not opposed.  Consequently, the court deemed the modification to be contested.

Second, the modification was not noticed for hearing on February 28, 2012.  This was discussed at length before any testimony at the evidentiary hearing.  Both parties agreed to waive any notice defect and proceed with the hearing on the modification and motion for relief from stay.

**I. Debtors' proposed modification of plan**

The modification is the cotter pin for Debtors' ability to retain their business.  If Debtors can successfully modify their plan, it will moot the relief from stay.  If they cannot, CIT will obtain relief and proceed to foreclose on the property.  The court will therefore address the modification first.

Post-confirmation modifications of plans are authorized under 11 U.S.C. § 1329.  In spite of this authorization, courts grapple with modifications because of their natural tendency to disturb the binding effect of a confirmed plan pursuant to 11 U.S.C. § 1327.  *See, e.g.* Storey v. Pees (In re Storey), 392 B.R. 266 (B.A.P. 6th Cir. 2008).  In balancing the competing provisions, the Sixth Circuit Court of Appeals has steadfastly interpreted § 1329 narrowly, often in disagreement with other courts.  *See* Chrysler Fin. Corp. v. Nolan (In re Nolan), 232 F.3d 528 (6th Cir. 2000); Ruskin v. DaimlerChrysler Serv. North America (In re Adkins), 425 F.3d 296 (6th Cir. 2005). Very generally, the Sixth Circuit advocates a position that protects the allowed claim as of the confirmation date, stating that "[s]ection 1329(a) only permits modification of the *amount* and *timing* of *payments*, not the total *amount* of the *claim*.  Nolan, 232 F.3d at 535 (emphasis original).  To properly evaluate Debtors' proposed modification, the court must clarify the nature of CIT's claim when the plan was confirmed.

CIT originally filed a proof of claim on August 5, 2009, which was subsequently amended.  Claim 8-3, the claim existing when Debtors' fourth amended plan was confirmed, was filed on August 7, 2009.  Although a claim objection is pending now, that objection was not filed until October 24, 2011.  Consequently, the court finds that, at confirmation, CIT's claim designated 8-3 on the claims registered was the allowed claim for confirmation purposes.  The claim set forth a balance of $299,354.59 as of the filing date.  Arrearages were over $74,000.00.  CIT valued the property at $289,000.00.[1]

In spite of the fact that Debtors valued the property at significantly less, $99,000.00, no determination as to the secured value of the claim was made.  Instead, Debtors treated the claim as fully secured.  The plan stated, in the special provisions section, that "Debtors will sell the business property for sufficient monies to satisfy the CIT loan by September 1, 2011."  The

---

[1] This is also the value CIT used in its first motion for relief from stay filed on December 16, 2009.  According to the motion, the "valuation is based on an internal appraisal by the Movant."  (M. for Relief from Stay ¶ 6.)

treatment of the claim as fully secured is also borne out by (1) the fact that Debtors made no provision for a deficiency balance in the plan and (2) the plan is a one hundred percent plan and the payments into the plan are not ample enough to cure a deficiency on the CIT loan. Although the plan also provided for Debtors to maintain the on-going monthly mortgage payments of $2,143.00, it was not possible for Debtors to satisfy the loan save through the sale. Consequently, the court finds a sale in full satisfaction was contemplated. As a result, the court concludes that the CIT claim was a fully secured allowed claim to be paid in full in less than a year from plan confirmation. Approval of a modification is founded on this premise.

Section 1329(a) identifies four bases for modifying a plan. Debtors cite 11 U.S.C. § 1329(a)(2) as the basis for the modification. Under this provision, a plan can be modified to "extend or reduce the time for such payments." In order to obtain approval of a modification, the bankruptcy code imposes the same requirements and standards that are applicable to plans and confirmation. 11 U.S.C. § 1329(b)(1). The proponent of the modification bears the burden of proof. In re Williams, Case No. 06-60980 (Bankr. N.D. Ohio October 28, 2010) (citing Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430 (B.A.P. 9th Cir. 1997), In re Wetzel, 381 B.R. 248 (Bankr. E.D. Wis. 2008)).

Under the modification, Debtors seek to extend the time for payment of the CIT claim. Rather than satisfy the loan by September 1, 2011, Debtors now want the term plan to bring the mortgage current. This implicates § 1329(a)(2). Effectively, Debtors' proposed modification treats CIT's claim as long-term debt. They do not intend to pay CIT in full through the plan under the modification but now want to cure-and-maintain the mortgage. As a result, CIT's recovery under the plan will be reduced because they will not receive the full balance of their claim through the plan. Instead, a balance will remain after the bankruptcy case completes. Since CIT did not receive the balance on its claim by September 1, 2011, the modification also clearly will extend the time frame for payments on the CIT claim under § 1329(a)(2).

Unlike Nolan and Adkins, Debtors' modification does not alter the claim. In Nolan, the debtor's plan provided for cram-down of a claim secured by an automobile. Into the plan, the debtor submitted a modification to surrender the car and pay any deficiency as an unsecured claim. The court rejected the modification, stated that "section 1329(a) does not expressly allow a debtor to alter, reduce or reclassify a previous allowed secured claim." Nolan, 232 F.3d 528, 532 (citation omitted). "A secured claim is fixed in amount and status and must be paid in full once it has been allowed." Id. at 533 (citation omitted). Part of the court's rationale in reaching its decision focused on the shifting of the risk between the parties. In similar fashion, the Sixth Circuit refused to reclassify a secured claim as an unsecured deficiency claim upon repossession of the collateral, Adkins, 425 F.3d 296, and declined to reclassify a default under a vehicle lease to the status of administrative expense claims. Ford Motor Credit Co. v. Parmenter (In re Parmenter), 527 F.3d 606 (6th Cir. 2008). The secured value and total amount of the claim is set at confirmation.

CIT still stands to be paid in full on its claim, albeit not in the original time frame. CIT will retain its mortgage lien and will receive the full value of its claim. Since the claim is unaltered, the modification is of the type allowed under the code. The court must now consider

4

whether Debtors' modification meets the requirements for plans and confirmation.

CIT argues that the modification must fail because Debtors have not demonstrated a change in circumstances warranting deviation from the confirmed plan. Debtors have a two-part counter to CIT's position. First, they state that they could not sell the property and second, they claim that business is better and they can now repay the mortgage arrearage.

Although the Sixth Circuit Court of Appeals has not addressed a required "change in circumstances" as the underpinning for a modification, the Bankruptcy Appellate Panel in this circuit specifically reviewed, and rejected, imposing such a requirement. <u>Ledford v. Brown (In re Brown)</u>, 219 B.R. 191, 195 (B.A.P. 6th Cir. 1998). However, the BAP did not foreclose review of a debtor's changed circumstances as a discretionary consideration a court could use in determining whether to approve a modification. The court will follow the BAP's approach. First, the statute does not impose a requirement of changed circumstances as a precursor to modification. Second, the court believes consideration of a change in circumstances would be inherent in an examination of other requirements, including good faith and feasibility. While a demonstration of changed circumstances may be required to satisfy general confirmation requirements, it is not a condition for modification.

Debtors opened the hearing with a detailed analysis of the amount necessary to cure the arrearage and maintain monthly mortgage payments to CIT. Debtors calculated that they need $4,793.66 per month to be able complete the plan and cure the mortgage default. Debtors are currently paying $2,143.58 per month to CIT for the regular monthly mortgage payments and $670.00 to the chapter 13 trustee, for a total of $2,813.58 per month. To succeed on their modification, Debtors need to increase their monthly plan payments to just over $1,980.00 per month.

CIT argues that Debtors modification fails because they have not proved it is feasible. At the hearing, Debtor was questioned about how he would fund the increased payments. He referenced two means of increasing payments: 1) sale of his residence and 2) increased business from Rapid Auto. Regarding the former, Debtor stated "[i]f we sell our house, we could probably pay the majority of this all off." (Transcript at 18:10-11). Debtor testified that houses in the area are listed between $359,000.00 and $409,000.00 and he felt his house would sell for between those amounts.[2] Testimony established that Wells Fargo has a mortgage on the property. The court takes notices of two related proofs of claim, numbers ten and eleven. Proof of claim number ten, filed in September 2009, indicates a balance of $245,341.44; proof of claim number eleven, a supplemental claim for a post-petition arrearage, is for $10,846.68.

The problem presented to the court is the lack of any specificity with the numbers, as well as the absence of any concrete sales plan by Debtors. Debtors presented very limited evidence on the factors that courts typically review when assessing the feasibility of a plan funding which

---

2 A recent review of public records is interesting. According to realtor.com on May 31, 2012, Debtors' home at 1245 Maxfli is not for sale on the Multiple Listing Service. The home at 1262 Maxfli is listed at $279,000.00. According to Summit County's valuation, Debtors' home is value at $263,230 while 1262 Maxfli is valued at $243,840.00. The court could not readily identify any other listings on Maxfli.

involves the sale of property, including: "(a) the amount of the creditor's claim; (b) the state of the market for the subject asset; (c) current sale prospects; (d) the existence and maintenance of any equity cushion; (e) the terms of the debtor's listing agreement, including the listing price for the subject asset and plans for marketing it; and (f) whether or not the plan includes a default or 'drop dead' remedy either to relieve the mortgagee from the automatic stay or to convert the case to another chapter if the sale does not close by the end of the proposed cure period." In re Crawford, 2012 WL 930281 (Bankr. D. Colo. 2012) (citing In re Mastel, 2010 WL 234971, *5-6 (Bankr. D. Mont. 2010); In re Erickson, 176 B.R. 753, 756-57 (Bankr. E.D. Penn. 1995)). Without this type of evidence, Debtors have failed to demonstrate a reasonable likelihood of success with their proposal to fund the plan with a potential sale of their house. See also In re Hogue, 78 B.R. 867, 872 (Bankr. S.D. Ohio 1987) (finding "debtors' bare assertions that they will sell or refinance their residence at or near the end of their Chapter 13 plans, standing alone, plainly does not satisfy the feasibility requirement of § 1325(a)(6)").

Debtors do not have an appraisal of their home. They did not factor in any closing costs or other sale expenses. There was no account of the market time for a sale and no presentation the amount owed to Wells Fargo. There is no protection offered to CIT in the proposal by way of a drop dead provision or time frame for the sale. Additionally, the court is not convinced that Debtors are committed to a sale of their residence. Rather, it appears Debtors would use a sale as a final resort in the event they cannot maintain payments to CIT. This basis for funding the plan is speculative, vague and does not meet Debtors' burden to establish feasibility of the modification.

Turning to their second funding source, Debtors posit that the business will support the increased payment. Debtors introduced Exhibit D, a 2011 profit and loss statement ("P & L") for Rapid Auto showing a -$2,445.35 net loss for 2011. The court sees no expenses listed for payments to either of the Debtors, no salary line expense, no indication that Rapid Auto is making any contribution to the chapter 13 plan. Debtors' amended schedules indicate that Mr. Milano is receiving a draw from the business, but the P & L does not support this statement. Per the P & L, the business is not breaking even before consideration of renumeration to Mr. Milano, the mortgage company, or the chapter 13 trustee. The monthly P & L statements show net losses in the months of January, April, May, July, September, October, and December. Based on the figures presented in Exhibit D, the court finds no basis for Debtors' ability to increase plan funding $1,980.08 per month.

Debtors also introduced approximately two years of bank statements from Rapid Auto. The court highlights the following:

| Date | Deposits | Deductions | Ending Balance |
| --- | --- | --- | --- |
| January 2011 | $10,598.21 | $11,708.27 | $3,276.87 |
| June 2011 | $105,211.07 | $101,615.78 | $12,259.40 |
| December 2011 | $10,319.89 | $11,241.54 | $3,363.71 |

Over the course of a year, the bank account shows no significant change in the ending balance

from the first month of the year to the last month of the year. It appears that the mortgage payment to CIT is paid through the business checking account, so this expense is covered. What the court cannot conclude is that that bank statements indicate an ability to fund an additional $23,761.00 in plan payments over the course of the year. There was no testimony that net earnings have been deposited elsewhere and are available. With only these figures to rely on, feasibility is not apparent.

Debtors introduced Exhibit C, a document titled "Milano Deposits." None of the figures on Exhibit C correspond to the deposit totals listed in the checking account statements. The court interprets Exhibit C to be Debtors' attempt to demonstrate that business is improving based on increased deposits of approximately $205,000.00 between 2010 and 2011. Even if true, the deposits alone do not establish the ability to increase funding. It is the bottom line that is material.

Further, the court admits some perplexion by Exhibit C because the deposit figures in Exhibit C do not directly correspond to the deposit figures in the checking account statements. For example, the January 2011 bank statement shows under $11,000.00 in deposits, while Exhibit C references $87,696.49 in deposits. No explanation was offered to explain the numbers in Exhibit C. For these reasons, the court cannot rely on Exhibit C.

Debtors exhibits do not demonstrate an ability to fund the increased payments from increased business revenue. Consequently, the court cannot find the modification is feasible. The court will sustain CIT's objection to the modification.

**II.     CIT's motion for relief from stay**

CIT moved for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and 362(d)(2). Specifically, CIT alleges that there is no equity in the collateral, Debtors have failed to provide adequate protection by defaulting under the confirmed terms of their plan, and have failed to keep the property taxes current. There is no disagreement from Debtors on any of these contentions. In their schedules, Debtor's value the property at $99,000.00[3] and do not dispute that CIT's mortgage claim exceeds $300,000.00. Debtors did not sell the property as required by the plan, so there is a default under the plan. While Debtors have been making regular monthly payments on the mortgage, the arrearge is substantially untouched. Although no information is before the court related to the non-payment of real estate taxes, sufficient cause exists on the grounds of lack of equity and adequate protection to grant CIT's motion for relief from stay.

**III.    Objection to CIT's proof of claim**

On October 24, 2011, Debtors objected to CIT's amended proof of claim 8-3, filed on

---

3 Mr. Milano at one point testified that he did not agree with CIT's appraisals of the property. However, Debtors' own valuation from their schedules ($99,000.00) falls between the two CIT appraisals of $95,000.00 and $135,000.00, discrediting Mr. Milano. He testified that he had an offer of $495,000.00 for the business but had no documentation to back-up his statement. It appears that apples and oranges are being compared. The value of the business, including the real estate, would be markably different from the value of the real estate alone. No one addressed the vastly different figures.

7

August 7, 2009.  At the hearing, it appeared that Debtors' challenge was limited to the attorneys' fees included in the proof of claim.  By agreement of the parties, no argument was made on the objection to claim during the hearing, instead choosing to focus on the proposed plan modification and the motion for relief from stay.  Upon review of the record, it appears that CIT filed an amended claim, designated 8-4, on February 21, 2012, thereby rendering the objection to claim 8-3 moot.  Debtors have not lodged an objection to amended claim 8-4.  Consequently, there is no dispute before the court.

Finally, Debtors argued that CIT is pursuing a course of action because the loan has a federal guarantee and the proposed CIT course of action is likely to result in a smaller overall recovery on the loan and a larger loss to the federal government.  Although this appears to be true, it does not change the duties and proof required by bankruptcy law.

## **CONCLUSION**

The parties agree to many of the salient facts.  Debtors failed to comply with the terms of their confirmed plan and did not sell the commercial property by the time designated in the confirmed plan.  Debtors' case has been pending for three years without any significant payments on the prepetition arrearage.  Now Debtors propose to modify the plan to increase payments to cure the arrearage.  In order to do so, Debtors carry the burden of proving that the modification meets the same standards required for confirmation.  CIT successfully demonstrated that Debtors failed in this task because Debtors cannot establish their proposed modification is feasible.  As a result, the court cannot approve the modification.

Debtors default under the plan provides cause for relief from the automatic stay.  Debtors have no equity in the property and have failed to provide adequate protection to CIT.  CIT is therefore entitled to relief.

Following Debtors' objection to CIT's amended claim, CIT subsequently filed another amended claim.  This amendment renders the objection moot.

The court will immediately issue an order in accordance with this opinion.

#   #   #

8

**Service List:**

Edwin H Breyfogle
108 Third St NE
Massillon, OH 44646

Jeffrey P McSherry
Bricker & Eckler LLP
9277 Centre Pointe Dr, Suite 100
West Chester, OH   45069

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702